IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

SERENA ANN WHITEMAN,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C14-2072

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      A.    Whiteman's Education and Employment Background . . . . . . . . . . 4
      B.    Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . . 4
            1.    Whiteman's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . 4
            2.    Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . . 6
      C.    Whiteman's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . 11
      B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . 13
            1.    Credibility Determination . . . . . . . . . . . . . . . . . . . . . . 14
            2.    Dr. Kettman's Opinions . . . . . . . . . . . . . . . . . . . . . . . 17
            3.    Hypothetical Question . . . . . . . . . . . . . . . . . . . . . . . . 24

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI.   ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Serena Ann Whiteman on October 23, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1]  Whiteman asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits.  In the alternative, Whiteman requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review.  42 U.S.C. § 405(g).  42 U.S.C. § 405(g) provides the Court with the power to:  "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ."  *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'"  *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)).  Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'"  *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

---

[1] On November 7, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial

evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

### A. Whiteman's Education and Employment Background

Whiteman was born in 1970. She is a high school graduate. She did not participate in any special education classes while in school. Following high school, she attended one year of college. Whiteman's past relevant work includes being a fast foods worker and delivery driver.

### B. Administrative Hearing Testimony

#### 1. Whiteman's Testimony

At the administrative hearing, Whiteman's attorney asked Whiteman about her back problems and how such problems affected her functional abilities:

> Q: . . . [D]o [your back problems] affect your ability to sit?
> A: Yes.
> Q: How long can you sit at one time without having problems?
> A: About a half hour to an hour.
> Q: And what happens after you sat that long?
> A: When I go to stand up, it feels like somebody stabbing me in the back.
> Q: Okay, . . . what about standing? How long can you stand?
> A: I can stand for about a half an hour, 15 minutes to a half an hour.
> Q: What happens then?

4

|     |                                                                                          |
| --- | ---------------------------------------------------------------------------------------- |
| A:  | My leg will start to go numb, or I will feel a stabbing, sharp, knife pain in my back. . . . |
| Q:  | And what about walking? How far can you walk?                                             |
| A:  | A half a block, maybe.                                                                    |
| Q:  | What happens after you walk that far?                                                     |
| A:  | Again, my leg starts to -- my left leg will start to go numb. It'll start hurting, and then it'll go numb. |
| Q:  | What about bending and kneeling and stooping and crawling?                                |
| A:  | It's a sharp, knife-like pain in my back.                                                 |
| Q:  | Can't do any of those things?                                                             |
| A:  | No. . . .                                                                                 |
| Q:  | Do you have any problems lifting things?                                                  |
| A:  | Yes.                                                                                      |

(Administrative Record at 169-70.)

Next, Whiteman and her attorney discussed her difficulties with bipolar disorder. Whiteman indicated that due to her bipolar disorder, she had trouble remembering things and concentrating on things. For example, Whiteman testified "I have problems, like, remembering just day-to-day stuff. Things that I did, like, last week, I couldn't -- it's like a short-term memory, I guess, loss[.]"[2] She further testified that she has difficulties with sleeping due to her bipolar disorder. She also explained that her medication, lithium, produces side effects such as drowsiness and jitteriness.

Whiteman and her attorney also discussed her difficulties with anxiety. According to Whiteman she rarely has social interaction with people outside her family. She occasionally attends church, and rarely attends her children's functions. She stated that she does not attend such events because of "bathroom issues" and "anxiety issues." In

---

[2] Administrative Record at 176.

5

describing her bathroom issues, Whiteman testified "I'm going to the bathroom six to 12 times a day, between, it'll last between five to 15 to 20 minutes."[3]

Finally, Whiteman's attorney inquired of Whiteman about her current ability to perform full-time work:

> Q:    . . . Do you think, from the time you quit working at Arby's until the present time, you're able to do work?
>
> A:    No.
>
> Q:    Tell the judge why.
>
> A:    I don't think I'm able to work, because my bathroom issues, my bowel issues, my back issues.
>
> Q:    Well tell him, don't tell him the issues.  Tell him why those are --
>
> A:    I don't think that my job is going, a place of employment is going to hire me to sit in the bathroom. I don't think that they're going to hire me because I'm not going to be able to do the job up to their satisfaction, because I can't move the way I should be able to move, and I'm not going to be able to take my breaks and go to the bathroom whenever I need them, and for how long I need them. So, I don't think that a place of employment is going to hire me because of those.

(Administrative Record at 180-81.)

### 2.    *Vocational Expert's Testimony*

At the hearing, the ALJ provided the vocational expert with a hypothetical for an individual who is:

> limited to performing no more than light work[.] . . . I want you to assume that this worker has some non-exertional limits, namely that she can stoop, crouch, kneel and crawl only occasionally.    Assume the worker cannot work in environments where she would be exposed to, would have

---

[3] *Id*. at 179.

> concentrated exposure to dust, fumes, airborne [irritants] or
> things like that.

(Administrative Record at 181-82.) The vocational expert testified that under such limitations, Whiteman could perform her past work as a fast foods worker and delivery driver. Additionally, the vocational expert testified that under such limitations, Whiteman could also work at the following light jobs: (1) office helper, (2) retail marker, and (3) mail clerk. The ALJ provided the vocational expert with further functional limitations:

> Q:     Okay. If I were to add some additional functional
>        restrictions, namely that the worker, on a completely
>        unpredictable basis, would need to leave the work
>        station or need to be completely non-productive for,
>        let's just say, three times every workday, and would
>        need to be non-productive or absent from the work
>        station for up to 20 minutes, those three times -- again,
>        this is completely unpredictable -- would that sort of
>        frequency or schedule of non-productivity, would you
>        consider that work[er] to be competitively employable?
> A:     No, it would not.

(Administrative Record at 183.)

## C. Whiteman's Medical History

On June 1, 2007, based on a referral from her primary treating physician, Whiteman met with Dr. Andrew Nugent, M.D., regarding slowly progressive low back pain. When meeting with Dr. Nugent, Whiteman reported that over the past 3-4 days her back pain was "severe" with "any sort of movement." She rated her pain at 6 out of 10, with 10 being the most severe pain, at rest. She also reported occasional pain radiating down both of her legs. Upon examination, Dr. Nugent found Whiteman's back to be tender along the lumbar spine, and positive for muscle spasms. Dr. Nugent also reviewed a past MRI, which showed L5 herniation without significant nerve root impingement. Dr. Nugent diagnosed Whiteman with radicular low back pain. Dr. Nugent recommended

7

pain medication as treatment. Dr. Nugent also provided the following home care instructions:

> Avoid heavy lifting. Maximum weight should be between 5-10 pounds (this is roughly a gallon of milk). Be extremely careful bending or reaching for objects. Avoid sitting for long periods of time. Apply ice to back 20 minutes every 2-3 hours, ok to apply heat in between ice applications.

(Administrative Record at 488.)

On June 19, 2007, Whiteman went to the emergency room at the University of Iowa Hospitals and Clinics ("UIHC"), complaining of back pain. Upon examination, Dr. Christopher Buresh, M.D., found Whiteman's lower spine to be very tender. Dr. Buresh admitted Whiteman to Family Practice for pain control. She was discharged on June 21, and ordered to start outpatient physical therapy.

Also on June 21, 2007, Whiteman met with Dr. Sergio A. Mendoza, M.D., an orthopedist. Whiteman reported to Dr. Mendoza that her back pain was continuous and "extremely" bothersome. She also reported pain, numbness, and tingling in her left leg. She stated that her left leg pain was also "extremely" bothersome. Whiteman described her functional abilities as follows: (1) only able to lift light objects; (2) unable to walk more than a few steps at a time; (3) pain prevents sitting more than one hour; (4) pain prevents standing more than 10 minutes; and (5) pain interrupts her sleeping. Dr. Mendoza reviewed Whiteman's MRI and found mild disc herniation at L5-S1, producing no significant pressure on her nerve roots. Upon examination, Dr. Mendoza diagnosed Whiteman with low back pain and lower extremity symptoms. Dr. Mendoza opined that her diagnosis was "not consistent with her MRI findings."[4] Dr. Mendoza recommended physical therapy as treatment.

---

[4] Administrative Record at 512.

8

On October 26, 2007, Whiteman returned to the UIHC complaining of left leg pain. She met with Dr. Ahmed Azeemuddin, M.D. Whiteman described her leg pain to Dr. Azeemuddin as follows:

> [Whiteman] notes that for about 1 1/2 to 2 months she has had worsening pain in her left leg. She describes it as sharp pain that travels from her left leg to her kneecap. She also gets numbness and tingling from the kneecap down to her toes. This is present all the time and does not change with position or time of day. The leg pain is aggravated by standing for a prolonged period or by bending over. Additionally, she notes that she has significant sensitivity to even the slightest touch of the left leg described as the sensation of a razor blade gliding over her skin. She has noticed some weakness in her leg, and she has not been up out of bed very much at all except to go to doctor's appointments since the leg has been bothering her.

(Administrative Record at 522.) Dr. Azeemuddin also noted that Whiteman "does have a history of back pain, but she has been going to local rehab for this and feels it is helpful."[5] Upon examination, Dr. Azeemuddin found some weakness in Whiteman's left leg, particularly with dorsiflexion and plantar flexion. Dr. Azeemuddin diagnosed Whiteman with radiculopathy in the L4-L5 or S1 region. Dr. Azeemuddin recommended medication as treatment.

On September 1, 2009, Whiteman met with Dr. Jean E. Abdallah Abou Jaoude, M.D., complaining of neck, right arm, and back pain. In reviewing her symptoms, Dr. Jaoude noted that:

> Mrs. Whiteman comes in today for neck pain associated with some upper back pain. She reports that yesterday while she was working at Arby's, she lifted a box of fries on her right shoulder. She immediately felt pain. Today she reports that she is having a lot of pain in the right-sided neck area, right shoulder area, and right upper back area. She reports that any

___

[5] *Id.* at 522.

movement of her arm would cause her pain. She has limited range of motion of her right-sided neck because of the pain. . . . She did report having some weakness in her right upper extremity.

(Administrative Record at 420.) Upon examination, Dr. Jaoude diagnosed Whiteman with right-sided neck pain and upper back pain. Dr. Jaoude found no signs of cervical disc problems. Dr. Jaoude recommended medication as treatment.

On March 1, 2013, Dr. Matt Kettman, M.D., Whiteman's long-time treating physician, filled out a "Crohn's & Colitis Residual Functional Capacity Questionnaire" for Whiteman. Dr. Kettman indicated that he was a family practitioner who had treated Whiteman for eleven years. Dr. Kettman diagnosed Whiteman with back pain, bipolar disorder, panic attacks, chronic diarrhea, and abdominal pain. Dr. Kettman opined that Whiteman's prognosis was poor. Dr. Kettman identified the following symptoms for Whiteman: chronic diarrhea, abdominal pain, malaise, fatigue, and loss of appetite. Dr. Kettman also noted that Whiteman suffered from constant and severe back pain that radiated into her left leg causing leg numbness. Dr. Kettman further indicated that Whiteman had "constant" bipolar and depressive disorders, identified by flat affect and racing thoughts. Dr. Kettman opined that Whiteman's experience of pain and other symptoms was severe enough to "constantly" interfere with her attention and concentration. Dr. Kettman found that Whiteman was "incapable" of even low stress jobs. With regard to her functional abilities, Dr. Kettman determined that Whiteman could: (1) not walk even 1 city block; (2) sit for 5 minutes at one time before needing to get up; (3) stand for 5 minutes at one time before needing to sit down; (4) sit and stand/walk less than 2 hours in an eight-hour workday; (5) never lift less than 10 pounds; and (6) never crouch, rarely twist, stoop, bend, or climb ladders, and occasionally climb stairs. Dr. Kettman also determined that Whiteman would need to take 7 unscheduled restroom breaks, lasting 5 minutes throughout the workday day. Dr. Kettman further indicated that

Whiteman would need to lie down every 20 minutes for up to 1 hour during a typical workday. Lastly, Dr. Kettman opined that Whiteman would miss more than four days of work per month due to her impairments or treatment for her impairments.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Whiteman is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the

listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Whiteman did not engage in substantial gainful activity during the relevant time period from September 1,

2009 through her date last insured of December 31, 2009.[6] At the second step, the ALJ concluded from the medical evidence that Whiteman had the following severe impairment: degenerative disc disease of the lumbar spine. At the third step, the ALJ found that Whiteman did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Whiteman's RFC as follows:

> [Whiteman] had the residual functional capacity to perform light work . . . except she could stoop, crouch, kneel, and crawl only occasionally. She cannot work in environments where she would have concentrated exposure to dust, fumes, or airborne irritants.

(Administrative Record at 138.) Also at the fourth step, the ALJ determined that Whiteman could perform her past relevant work as a fast foods worker and delivery driver. At the fifth step, the ALJ determined in the alternative, that based on her age, education, previous work experience, and RFC, Whiteman could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Whiteman was not disabled.

## B. Objections Raised By Claimant

Whiteman argues that the ALJ erred in three respects. First, Whiteman argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Second, Whiteman argues that the ALJ failed to properly consider the opinions of her

---

[6] In his decision, the ALJ found that Whiteman had performed substantial gainful employment as a full-time fast foods worker at Arby's from September 1, 2008 to September 1, 2009, preventing entitlement to Title II disability insurance benefits until September 1, 2009. *See* Administrative Record at 134. Furthermore, Whiteman was last insured for Title II disability insurance benefits on December 31, 2009. *See* Administrative Record at 294. Thus, the relevant time period for determining disability is September 1, 2009 to December 31, 2009. Whiteman does not dispute this time period in her briefing.

treating physician, Dr. Kettman. Lastly, Whiteman argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1.    Credibility Determination

Whiteman argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Whiteman maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Whiteman's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies

in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ addressed Whiteman's subjective allegations as follows:

> After careful consideration of the evidence, the undersigned finds that [Whiteman's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Whiteman's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> [Whiteman] experiences some symptoms and limitations; however, the record does not fully support the severity of [Whiteman's] allegations. As discussed in full detail above,

the objective medical findings of record failed to support [Whiteman's] allegations of disabling symptoms and limitations during the period in question. The undersigned finds that [Whiteman] was not a reliable source of accurate information concerning her functioning during the period in issue.

Significantly, while testifying that she stopped working at Arby's in September of 2009 due to bipolar disorder, she did not seek any treatment regarding these alleged symptoms during this period (See Exhibits 1F; 2F). Notably, treatment records indicated that [she] presented for treatment of muscle pain only on September 1, 2009, after lifting a box while working at Arby's. At this time, she failed to mention or report any mental health related symptoms (Exhibit 2F). Furthermore, [Whiteman] testified that due to back problems she could sit for about 30-60 minutes, stand for 15-30 minutes before having numbness and stabbing pain, walk half a block before having leg pain and numbness, and being unable to bend, squat, or kneel without pain, reporting this functional level since 2007. However, contrary to these allegations, [Whiteman] sought minimal medical treatment after evaluations for lower back pain at the University of Iowa in 2007 (Exhibit 4F). Notably, there was no indication she sought further medical treatment concerning her allegations of lower back pain following this 2007 treatment. Her pain complaints at this time were found to be inconsistent with objective MRI findings (*Id.* at 28). While she reported neck and back pain after lifting in September 2009, [Whiteman's] primary care physician indicated this was only musculoskeletal in nature. She sought no further treatment for pain following this date (Exhibit 2F).

The undersigned finds [Whiteman's] lack of seeking consistent medical treatment and the relatively minimal findings on physical examination erodes the credibility of her allegations of disabling symptoms and limitations during the period in question.

(Administrative Record at 142-43.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Whiteman's treatment history, medical history, functional restrictions, work history, and use of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Whiteman's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Whiteman's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2.   *Dr. Kettman's Opinions*

Whiteman argues that the ALJ failed to address, let alone properly evaluate the opinions of her treating physician, Dr. Kettman. Whiteman maintains that the ALJ's failure to address and weigh Dr. Kettman's opinions constitutes reversible error. Therefore, Whiteman concludes that this matter should be remanded to allow the ALJ to fully consider and address Dr. Kettman's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not

automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the

18

government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

Finally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ did not address the opinions provided by Dr. Kettman in the "Crohn's & Colitis Residual Functional Capacity Questionnaire" filed in March 2013. Whiteman hypothesizes that "[p]resumably the ALJ neglected to mention Dr. Kettman's opinion because he did not complete the Crohn's & Colitis Residual Functional Capacity Questionnaire until March of 2013, by which time Ms. Whiteman's insured status had expired."[7] In her brief, the Commissioner admits that the ALJ "should have explicitly stated that he discounted the opinion from Matt Kettman, M.D., and explained his

---

[7] Whiteman's Brief (docket number 13) at 18.

reasoning[.]"[8]   However, the Commissioner maintains that the ALJ's failure to do so is harmless error. The Commissioner points out that:

> Dr. Kettman issued his opinion on March 1, 2013,[9] more than 25 months after [Whiteman's] date last insured. Crucially, Dr. Kettman did not indicate that his opinion reflected [Whiteman's] functional abilities during the relevant time period; instead, his opinion related to [Whiteman's] functioning at the time he rendered the opinion, well after the relevant period ended. Thus, Dr. Kettman's opinion was immaterial because it did not address the relevant time period.

Commissioner's Brief (docket number 14) at 5-6.

If an ALJ would not have decided a case differently had she or he followed the proper procedure, then any error in not following such a procedure is harmless. *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (citations omitted). Furthermore, while an ALJ is required to fully develop the record, he or she is "not required to provide an in-depth analysis of each piece of evidence." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012). Moreover, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). Additionally, even though the ALJ has a duty to fully and fairly develop the record, "the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

Here, the ALJ did not address the opinions provided in March 2013, by Dr. Kettman in the "Crohn's & Colitis Residual Functional Capacity Questionnaire." Whiteman asserts that the ALJ should have addressed Dr. Kettman's 2013 opinions

---

[8] Commissioner's Brief (docket number 14) at 5.

[9] In fact, it was approximately 38 months between Whiteman's date last insured and Dr. Kettman's issued opinion.

because he *may* have intended that they applied to her alleged disabling condition during the relevant time period of September 1, 2009 to December 31, 2009.[10] In support of her assertion, Whiteman refers to two medical records from 2007, where she was treated for back pain.[11] While Whiteman was admitted to UIHC for pain control over a 3-day period in June 2007, the treatment notes demonstrate that she was discharged with her pain under control, and ordered to seek physical therapy and exercise.[12] In his decision, the ALJ addressed these medical records and noted that "[a]t the time of discharge, physical examination findings were unremarkable[.]"[13] The ALJ also thoroughly discussed Whiteman's treatment for back pain in October 2007, a medical record Whiteman does not refer to in her brief.[14] The ALJ pointed out that on examination in October 2007, Whiteman had symptoms consistent with radiculopathy in the L4-5 or S1 region, and was treated with medication.[15] More significantly, the ALJ also pointed out that "following this [October 2007] evaluation, the longitudinal medical evidence of record failed to indicate that [Whiteman] presented for further treatment concerning her allegations of disabling back pain and symptoms until September 1, 2009."[16]

---

[10] *See* footnote 6 (explaining the short window for establishing disability in this case).

[11] *See* Administrative Record at 490-94 (medical record from June 2007, pertaining to 3-day hospital stay for back pain); 508-13 (medical record also from June 2007, pertaining to Whiteman's 3-day hospital stay for back pain).

[12] *See* Administrative Record at 494.

[13] Administrative Record at 140.

[14] *Id.* at 140-41.

[15] *Id.* at 141.

[16] *Id.*

At her September 1, 2009 examination, Whiteman was diagnosed with back and right-sided neck pain that was muscular in nature. Whiteman was treated with medication. The ALJ found it notable that "there was no indication [Whiteman] sought further evaluation or treatment concerning lower back or neck pain symptoms following this evaluation, which was inconsistent with her allegations of disabling pain symptoms during this period."[17] Consistent with the ALJ's findings, Whiteman in her brief, points to no medical records from this time period, other than the September 1, 2009 one-time visit for back and neck pain, to support her contention of disability. Additionally, the ALJ determined that from September 2008 until September 2009, Whiteman, by her own testimony, and confirmed by earnings records, worked full-time at a fast foods restaurant.[18] Under such circumstances, the Court agrees with the Commissioner that:

> [Whiteman] has provided no explanation for the discrepancy between her ability to perform that work in 2009 and Dr. Kettman's opinion stating that [she] could only stand and sit for five minutes at a time and would require a one-hour break every 20 minutes. An opinion that a claimant is disabled, which would be the necessary conclusion if the extreme limitations found in Dr. Kettman's opinion were adopted, is "wholly inconsistent" with a claimant's performance of substantial gainful activity.

Commissioner's Brief (docket number 14) at 7. Given that the opinions expressed by Dr. Kettman in the "Crohn's & Colitis Residual Functional Capacity Questionnaire" were issued more than three years after the relevant time period for determining disability in this case, and such opinions are inconsistent with Whiteman's ability to perform full-time work from September 2008 to September 2009, the Court determines that the ALJ's failure to address Dr. Kettman's opinions from the "Crohn's & Colitis Residual Functional Capacity

---

[17] *Id.* at 142.

[18] Administrative Record at 137.

Questionnaire" in his decision does not constitute reversible error. *See Renstrom*, 680 F.3d at 1065 (providing that even though an ALJ is required to fully develop the record, he or she is "not required to provide an in-depth analysis of each piece of evidence"); *see also Craig*, 212 F.3d at 436 ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Furthermore, the Court bears in mind that it is the ALJ's duty to determine a claimant's RFC. *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). An ALJ's RFC assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Here, the ALJ determined that:

> the objective findings in this case fail to provide strong support for [Whiteman's] allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity.

(Administrative Record at 139.) The ALJ also concluded that:

> the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain [Whiteman's] allegations of disabling symptoms. . . .

> [Whiteman] does experience some symptoms and limitations
> but only to the extent described in the residual functional
> capacity above.

(Administrative Record at 143-44.) In support of these conclusions, the ALJ thoroughly addressed and considered Whiteman's medical history and treatment for her complaints.[19] The ALJ also properly considered and thoroughly discussed Whiteman's subjective allegations of disability in making his overall disability determination, including determining Whiteman's RFC.[20]

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Whiteman's medical records, observations of treating physicians, and Whiteman's own description of her limitations in making the ALJ's RFC assessment for Whiteman.[21] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

### 3. *Hypothetical Question*

Whiteman argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Whiteman also argues that the ALJ's hypothetical did not contemplate all of her functional limitations.

---

[19] *See* Administrative Record at 138-144 (providing a thorough discussion of Whiteman's overall medical history and treatment during the relevant time period).

[20] *See* Administrative Record at 142-43 (providing a thorough discussion of Whiteman's subjective allegations of disability).

[21] *Id.* at 138-144 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

Whiteman maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Whiteman's testimony in determining Whiteman's impairments and functional limitations.[22] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

---

[22] *See* Administrative Record at 138-144.

## V. CONCLUSION

The Court finds that the ALJ properly determined Whiteman's credibility with regard to her subjective complaints of disability and pain. The Court also finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Furthermore, the Court determines that the ALJ's decision not to address the March 2013 opinions of Dr. Kettman is not reversible error. Lastly, the ALJ's hypothetical question to the vocational expert properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 28ᵗʰ day of ___July___, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA